## St. Louis Paint Manufacturing Company, Plaintiff Appellant, v. George S. Mepham, Defendant Appellant.

### St. Louis Court of Appeals, March 13, 1888.

1. CORPORATION—OFFICER TRADING WITH CORPORATE FUNDS.—The liability of an officer of a corporation to account to the corporation for the profits realized from a transaction effected through a use of corporate funds, has no existence where such transaction was consummated with the consent of all the shareholders, and the profits thereof have been distributed and paid to them in proportion to the shares of each, respectively.

2. —— DECREE—NECESSARY PARTIES.—Where a controversy arises as to whether a transaction was effected by a corporation officer on behalf of the corporation, or on individual account of himself and other stockholders, and as to the amount, if any, of the corporate funds employed therein, and where the transaction itself included the introduction of a new stockholder who may be entitled, as such, to an interest in the profits realized, a decree in adjustment of the rights and liabilities involved cannot be properly entered in a proceeding to which the officer and the corporation are the only parties.

3. —— EVIDENCE—ADMISSIONS.—If the president and the secretary of a corporation act conjointly in the purchase and sale of stock of the corporation, the statements and admissions made by the president to the purchaser, touching the interest he would acquire, are admissible in evidence against the secretary, whether the transaction be a private venture, or a venture of the corporation.

APPEAL from the St. Louis Circuit Court, HON. GEORGE W. LUBKE, Judge.

*Reversed and remanded.*

W. C. & J. C. JONES and LODGE & TALTY, for the defendant appellant. : The plaintiff company had no power under the law to either directly or indirectly purchase, deal, or traffic in its own stock. 1 Morawetz on Priv. Corp. [2 Ed.] secs. 113, 434; Thomp. on Liab. Stock., sec. 234; *Currier v. Slate Co.*, 56 N. H. 262.

Under the evidence, even taking the theory of the case taken by the court below, it cannot be said that defendant used more than $120.66 of plaintiff company's moneys, and by the taking up of the plaintiff's notes for $2,804.34 bearing interest at ten per cent. per annum, and which would not mature for two years thereafter, the plaintiff received a greater benefit than the amount of the profit realized on the transaction which would come to it from the use of said sum of $120.66. *Williams v. Patrons of Husbandry*, 23 Mo. App. 132. The evidence shows that plaintiff has no cause of action against defendant. At the time Ritterskamp sold and transferred his stock to defendant, he ceased to be a shareholder in plaintiff corporation, he was discharged from all further liability to contribute capital, and he likewise lost all right to share in the company's profit and to participate in the management of its affairs. The transferee, George S. Mepham, defendant appellant, became a stockholder in place of Ritterskamp, the retiring member. 1 Morawetz on Priv. Corp. [2 Ed.] sec. 159; *Miller v. Ins. Co.*, 50 Mo. 57. Every one of the stockholders in plaintiff corporation at the time of this transaction agreed to the transaction, afterwards approved of and ratified defendant's act and received their share of the profits realized on the transaction. 1 Morawetz on Priv. Corp. [2 Ed.] secs. 227, 228, 261; *Hotel Co. v. Wade*, 97 U. S. 13; *Church Appeal*, 88 Pa. St. 503.

Dyer, Lee & Ellis, for the plaintiff appellant: While it is true a corporation cannot speculate in its own stock for the purpose of realizing profit therefrom, yet when a director or officer of the company so speculates with the funds or credit, or in behalf of the company, he cannot excuse himself by pleading *ultra vires*, when called to account by the corporation for profits in such speculation. Thompson's Liability of Officers, 362, 360, sec. 8. When an officer of a corporation wrongfully, with the moneys or credits of his

company, realizes a secret profit for the use of himself, or of himself and another officer of the company, in such case the company can, by a bill in equity, compel him to account for and pay over the profits so realized. *Chouteau v. Allen*, 70 Mo. 290; *Landis v. Saxton*, 89 Mo. 375, 382 ; *McAllen v. Woodcock*, 60 Mo. 174. There being no controversy about the fact that thirty-two hundred and twenty-five dollars of the forty-five hundred dollar check (paid to Ritterskamp on account of his stock), was the money of the company, the entire profit realized on that sum, to-wit, $761.49, should be paid plaintiff by defendant in this action, even though defendant afterwards paid over to W. G. Mepham as an individual, one-half of that sum. *Att'y Gen'l v. Wilson*, 1 Craig and Phil. 1; s. c., 10 L. J. (Ch.) 53 ; Cooley on Torts, 133, 144 ; Bliss Code Plead., sec. 82; Thompson's Liability of Officers, 376, sec. 17, 353, note 6 ; *Cunningham v. Pell*, 5 Paige Ch. 607, 612 ; *Miller v. Fenton*, 11 Paige Ch. 18.   The evidence clearly shows the thirty-four hundred dollars cash payment made by Dr. Stevens, and which went to Ritterskamp on the purchase of stock, was paid to the company and by the company to Ritterskamp ; and that it was not paid to defendant individually as on a purchase of stock from him.   Hence we say the transaction, although *ultra vires*, enured to the benefit of the company as between it and the defendant, and the plaintiff is entitled to recover the entire profit realized on the investment of sixty-six hundred and twenty-five dollars company money, which profit was $1,865.37.   *Bent v. Priest*, 10 Mo. App. 544; s. c., affirmed, 86 Mo. 475; *Chouteau v. Allen*, 70 Mo. 290 ; *Landis v. Saxton*, 89 Mo. 375, 382 ; *Leary v. Railroad*, 16 Mo. App. 560.

ROMBAUER, P. J., delivered the opinion of the court.

Under the peculiar facts of this case the state of

the pleadings becomes very material. The plaintiff's petition is as follows : " Plaintiff states that it is, and at the dates hereinafter mentioned was, a corporation organized and existing under the general laws of the state of Missouri, having its chief office and place of business in the city of St. Louis, Missouri ; that its authorized capital stock is three hundred shares of the nominal value of one hundred dollars each ; that heretofore, to-wit, on the sixteenth day of June, 1884, one Louis H. Ritterskamp was the owner and holder of one hundred shares of said capital stock of the nominal value of ten thousand dollars ; that at and before said date said Ritterskamp was offering to sell his said stock for the sum of seventy-eight hundred and forty-eight dollars ; that on said last-mentioned date and up to January, 1885, the defendant, George S. Mepham, was a stockholder and director in, and also secretary and acting treasurer of said company ; that on said sixteenth day of June, 1884, one Charles D. Stevens was willing to purchase one hundred shares of the stock of said company at and for the price and sum of one hundred dol-- lars per share ; that the defendant knowing all the facts hereinbefore recited did procure from said Ritterskamp an assignment of his said one hundred shares of stock, it being understood by the defendant at the time that he was acting as director and officer of plaintiff company, and in its interest and on its behalf, which said stock was assigned to the defendant and was immediately thereafter surrendered to the company and cancelled, and in lieu and stead thereof new certificates for said one hundred shares of stock were issued by the defendant acting for and in behalf of the plaintiff company and delivered to said Charles D. Stevens, for and in consideration of which stock the said Stevens did then and there pay to the defendant as secretary and acting treasurer of said company the sum of ten thousand dollars ; that all the moneys used by the defendant in the purchase of said stock from said Ritterskamp, to-wit,

the sum of seventy-eight hundred and forty-eight dollars, were the moneys and properties of the plaintiff company, as the defendant well knew; that no moneys of the defendant were by him used in the said transaction and negotiations; but that all thereof belonged to the plaintiff company; that it was the duty of the defendant then and thereupon to have accounted to the plaintiff company for the full amount of money received from said Stevens for the stock so issued to him, to-wit, the sum of ten thousand dollars; but the defendant wrongfully and fraudulently retained and still retains, and has and does refuse to account to said corporation for the sum of twenty-one hundred and fifty-two dollars thereof, being the difference between what said Ritterskamp received for his stock out of the moneys of the corporation and what was paid into the moneys of the corporation by said Stevens for said stock; that in the matters aforesaid the defendant did violate his obligation as an officer of, and director in, said company, and although often requested has refused to pay over and account for said moneys so wrongfully by him withheld. Wherefore, the plaintiff demands that the court order the defendant to account to the plaintiff for the said money so by him withheld, and that judgment for such sum be rendered thereon against the defendant and in favor of the plaintiff, with interest."

The answer of the defendant is a general denial and no more.

The action is of an equitable nature, and was treated as such by the court and by the parties. The finding of the court is contained in its decree, of which both parties complain; the plaintiff contending that under the evidence the defendant became chargeable with $1,865.37, profits realized by the use of corporate funds in the venture, and the defendant contending that under the evidence he was not chargeable at all.

The decree of the court is as follows: "And now at this day come the parties by their attorneys, and the court being fully advised, doth find that plaintiff is a

manufacturing and business corporation organized and
existing under the laws of this state; that in the month
of June, 1884, and thereafter, until and including part
of the month of January, 1885, defendant was the sec-
retary and treasurer of the plaintiff corporation, and
was acting as such; that during all said period of time
one William G Mepham was and now still is the presi-
dent of the plaintiff corporation, and acting in that
capacity for plaintiff; that, in said month of June, 1884,
one Louis Ritterskamp was the owner and holder of one
hundred shares of capital stock of plaintiff company of
the par value of one hundred dollars each; that said
William G. Mepham and defendant George S. Mepham,
then holding the offices in plaintiff company aforesaid,
purchased the said one hundred shares of stock from
said Louis Ritterskamp for the price and sum of sev-
enty-nine hundred dollars, and immediately sold and
delivered the same to one Charles D. Stevens at the
price and for the sum of ten thousand dollars, of which
sum last named said Charles D. Stevens has heretofore
paid them $9,765.37; that they, the said William G.
Mepham and defendant George S. Mepham, in making
the said purchase from the said Louis Ritterskamp, used
and employed of the moneys to plaintiff belonging the
sum of thirty-two hundred and twenty-five dollars,
which they delivered over to said Louis Ritterskamp in
making payment to him for said shares and obtaining
from him the ownership and possession thereof; that
the profit realized by them, said William G. Mepham
and George S. Mepham, defendant herein, on said trans-
action is $1,865.37, which amount they have heretofore
received; that said William G. Mepham received and
retained one-half of said profit and the defendant
received the other half, a part of which he retained him-
self and the balance he paid to his mother, Maria Mep-
ham, and to his brother, Harry W. Mepham. And
the court further finds that although they, the said
William G. Mepham and defendant George S. Mepham,

did account for and restore to the plaintiff company the sum of thirty-two hundred and twenty-five dollars, so by them appropriated and used in making said purchase of shares, they have not accounted for nor paid over to plaintiff any part of the profit made and earned by them therewith in said speculation ; that a fair and equitable portion of such profit heretofore realized as aforesaid is demandable by plaintiff, and the court now ascertains and determines that the amount so demandable by plaintiff is $761.40, and that by reason of the facts hereinbefore stated the defendant should account with and pay over to plaintiff the one-half of said sum, that is to say, $380.74, for which amount last named the court now finds defendant to be indebted to plaintiff. It is, therefore, now by the court ordered, adjudged, and decreed that plaintiff recover of the defendant the said sum of $380.74, together with the costs of this action, and that plaintiff have thereof execution against defendant. And it is also by the court further ordered, adjudged, and decreed that nothing herein contained shall bar plaintiff from hereafter demanding from defendant that he account to plaintiff for plaintiff's equitable share of the sum of $234.63, now still due from said Charles D. Stevens on account of his purchase of said shares from said William G. Mepham and defendant, provided all or any part of said sum of $234.63 is received by defendant."

The following facts appeared in evidence : The St. Louis Paint Manufacturing Company was, at the date of the grievance complained of, a corporation with a capital stock of thirty thousand dollars, divided into three hundred shares of one hundred dollars each. One Louis Ritterskamp, held one hundred of these shares. One hundred were held by W. G. Mepham, the president of the company, and one hundred by the defendant, who was secretary of the company, and his mother and brother, in equal thirds. The corporation was then, and is now, solvent.

Ritterskamp became dissatisfied with one or both of his associates and proposed to sell out. W. G. Mepham and the defendant thereupon obtained from him the following option :

"St. Louis, May 30, 1884.

"For ten days from date above written I hereby agree to sell to the St. Louis Paint Manufacturing Company one hundred shares of stock in said corporation for the sum of seventy-nine hundred dollars in cash."

"Louis Ritterskamp."

This option, by subsequent endorsement, was extended to June 19.

It appears that all the parties originally intended that the corporation should become purchaser of this stock. Upon being advised by counsel of the illegality of such a transaction, it was decided that the stock, when bought, should first be transferred to the defendant, and by him surrendered to the corporation in exchange for new stock to be issued to a purchaser if found. So far there is no conflict in the evidence. During the life of the option, on June 16, the stock was bought from Ritterskamp and the seventy-nine hundred dollars paid to him in part with corporate funds; the certificates for it were transferred by Ritterskamp to defendant, and on June 17 were cancelled and surrendered to the corporation, and a new certificate for the stock was issued to Dr. Stevens, who paid and agreed to pay for it the sum of ten thousand dollars.

As to the character of this transaction the evidence conflicts. W. G. Mepham and Dr. Stevens, who, it appears, are still stockholders of the corporation, claim that the benefit of the venture was to enure to the benefit of the corporation, notwithstanding the fact that the defendant was an ostensible transferee. The defendant, on the other hand, who, it appears, had ceased to be a member of the corporation, claims that the benefit of the venture was to enure to the remaining stockholders; that he has so treated it, and has given credit for the profits realized

to such stockholders in proportion to their respective interests in the corporation. The defendant further claims, and the court has so found, that the defendant has, of the profits so realized, paid to W. G. Mepham his portion, that is to say one-half.

The only substantial difference between the two contentions is this: If the claim of W. G. Mepham and Stevens is correct, then defendant committed no wrong in using corporate funds in the purchase of the stock. The transaction in that view of the evidence was sanctioned by every stockholder. The identity of a corporation with the aggregate of its shareholders, where no rights of third parties intervene, is recognized by courts of law, and courts of equity could not permit a legal fiction to stand in the way of substantial justice, as these courts deal more with the substance than with the form of things. *Appeal of the Third Reformed Church*, 88 Pa. St. 503. In that event the wrong, if any, on part of defendant consisted in the fact that he failed to give credit to the corporation upon its books for the profits thus realized in the transaction. If, as he claims, and as the court found, he divided the profit thus realized and paid it to the various stockholders in proportion to their interest in the corporation, then the only person injured by the transaction in substance is Dr. Stevens, who being interested to the extent of one-third in the corporation would be deprived of one-third of the profit realized in this transaction.

On the other hand, if this was an individual venture of the defendant on behalf of himself and his brother and sister, and W. G. Mepham, as the court seems to have found from the evidence, and if all these parties have been paid their respective shares of the profits, then the only party who can possibly complain of defendant's conduct is Stevens, or those claiming under him. In either view of the case the corporation stands in court substantially as the representative of Stevens alone, and but for such representation would have no standing in court whatever.

To hold that the corporation may recover from the defendant the entire profit made upon this transaction, provided such profits were made with corporate funds, may be equivalent to holding that although he has accounted and paid over in full to every member of the corporation, he may be compelled to re-account and pay over again to the corporation as their representative.

Entertaining these views we must conclude that the decree is based upon an erroneous theory and cannot stand. The substantial question is evidently not the illegal use of corporate funds, because the use made of them seems to have been made with the consent of all stockholders. The substantial question is, has the corporation as such any interest in these profits, whether arising from the use of its funds or otherwise, and if so, how many of these shareholders have been paid such profits?

To determine these questions fully and intelligently, the proper parties are not before the court, nor are the pleadings in proper shape, nor has the evidence been received on a proper theory. We are, therefore, not in a position to formulate a decree. The decree of the court will be reversed and the cause remanded, plaintiff to have leave to amend its petition, bringing in other parties if so advised ; defendant to have leave to amend his answer setting up the facts as claimed by him in detail.

We may add that, in the view that we take of the case, the representations made by W. G. Mepham to Stevens, as to what interest Stevens would acquire in the profit of the venture if he became the purchaser of the Ritterskamp stock, are material and evidence concerning them is admissible, regardless of the fact whether they were made in the presence of the defendant or not. If the venture was a private venture of W. G. Mepham and defendant, then as to a third party either is bound by the representations made by the

other. If, on the other hand, it was a venture of the corporation with the consent of defendant, then defendant is bound by the representations of the president of the corporation.

If new parties are made as suggested then the court will be in a position to take a full account of the entire transaction and make such decree as will satisfy the demands of substantial justice regardless of mere fictitious representation. Costs to abide final disposition of the cause.

Reversed and remanded. Judge Thompson concurs.