404 September 10, 2025 No. 810

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KAREN MARIE SHIPPS,
*Defendant-Appellant.*

Curry County Circuit Court
22CR33919; A180687

Jesse C. Margolis, Judge.

Argued and submitted September 25, 2024.

Carla Edmondson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Kyleigh Gray, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

## PAGÁN, J.

Defendant appeals from a conviction for DUII, ORS 813.010. On appeal, she raises four assignments of error. In her first and second assignments of error, defendant asserts that the trial court erred by allowing the prosecutor to cross examine her about what she did *not* say to police, and then build a closing argument on those questions. In her third assignment of error, she asserts that the trial court erred by imposing a $2,500 fine. In her fourth assignment of error, she asserts that the trial court did not sentence her based solely on the facts of the case and her personal history. We conclude that each issue is unpreserved and that any error is not plain, and thus, affirm.

On June 29, 2022, defendant had recently been fired from her job at a grocery store. Her manager called her in the morning to inform her that she could come to the store to pick up her final paycheck; a short conversation ensued. About an hour later, defendant called her manager back asking why he had called earlier; her manager believed that defendant had forgotten the earlier conversation. Around 12:30 p.m., the manager saw defendant walking in the hallway of the grocery store, using a wall for support, with slurred speech and smelling of alcohol. The manager asked how defendant had gotten to the store; she said she drove. The manager offered to call her a cab, but defendant said she could drive home. The manager called the police.

Curry County Sherriff's Deputy Stout arrived and found defendant walking towards her vehicle. Stout asked if she had been drinking and defendant said no. Stout asked her to perform field sobriety tests; defendant agreed and proceeded to perform poorly. Stout then read defendant her *Miranda* rights. At no point during the questioning did defendant admit to having drank that day or provide any details of her drinking. Stout arrested defendant and administered a breath test, which registered 0.32 percent alcohol.

At trial, defendant took the stand and gave her version of why she had been drunk. She explained that she had never been fired before and was very nervous. She drove

to the store sober, but did not immediately enter the store. She retrieved a bottle of tequila from the trunk of her car and drank the bottle as she worked up the courage to enter the store. She testified that she had contacted a friend to request a ride home; said friend testified that defendant had indeed asked him for a ride home that day, that he had driven to the store, but, when he got there, defendant had already been arrested.

The state's cross examination of defendant focused almost entirely on defendant failing to tell Stout that she had drank a bottle of tequila in her car. We excerpt the most relevant part:

"Q: [You drank t]he entire bottle?

"A: Yes.

"Q: Okay. But you didn't tell the officer that?

"A: No.

"Q: You told him you hadn't—I believe from the video you said you drank—last time you drank was two days ago.

"A: Uh-huh (affirmative response).

"Q: Is that right?

"A: Yes, sir. I mean, yeah.

"Q: So—And you went through the entire DUI investigation with the officer, the field sobriety tests, the interview, the 15-minute waiting period, him reading you the Implied Consent Form and doing the breath test and you did not tell him one time that you—

"[Defense counsel]: Objection.

"THE COURT: Overruled.

"Q: —you didn't tell him one time throughout the entire investigation that you had drank in the car before going into [the grocery store]; is that right?

"A: No, sir, I didn't. I wasn't going to drive home, so I figured just to not tell him. That was wrong."

The prosecutor continued to press defendant on what she did not say to Stout for the rest of cross examination; the prosecutor also played parts of the video of Stout

questioning defendant. The cross examination of defendant went on to form the basis of the prosecutor's closing argument and rebuttal argument, in which the prosecutor noted:

> "Deputy Stout was with her for over an hour, I believe close to an hour and a half. Throughout this entire process, not once did she say, No, I wasn't drinking while driving. I sat in the parking lot, and I drank this bottle of liquor. She didn't say that once. In fact, she said the exact opposite of that. She said, No, I haven't had anything to drink. She said that multiple times, but she didn't ever—she never thought to say I drank after driving. I didn't—She knows that she's being arrested for driving under the influence and that that's what this investigation is about, and she never said that once, but now that she's on trial here six and a half months later, that's the story that she came up with."

The jury found defendant guilty.

In defendant's first assignment of error, she argues that the cross examination was an impermissible comment on her constitutionally protected right to silence. We review whether a prosecutor improperly commented on a defendant's right to silence for legal error. *State v. Ragland*, 210 Or App 182, 187, 149 P3d 1254 (2006). "A criminal defendant has a right to remain silent under Article I, section 12, of the Oregon Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution." *State v. Reineke*, 266 Or App 299, 308, 337 P3d 941 (2014) (internal citations omitted). In turn, a prosecutor may not comment on a defendant's invocation of their right to silence. *Ragland*, 210 Or App at 187.

As a preliminary matter, the state argues that the issue is unpreserved despite defendant's objection during the cross examination, because no record of the objection was made, and the objection could have been that the question was asked and answered.[1] Defendant argues that the

---

[1] Any trial attorney will surely attest that "asked and answered" is a frequent objection. But that phrase is found nowhere in statute. It derives its power from OEC 611(1), which provides that:

> "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth, avoid

nature of the objection was obvious from context. *See State v. Villar*, 287 Or App 656, 659, 404 P3d 1095 (2017) (it was apparent from context that the defendant was objecting to vindicate the defendant's right to silence).

Preservation requires that an issue "have been raised with sufficient clarity in the trial court to put the trial court on notice that it needs to rule on the issue and for the opposing party to have an opportunity to address the issue." *Gibson v. Walsh*, 308 Or App 119, 123, 480 P3d 990 (2020).

We are cognizant that providing a court with a proper record to rule on an objection is often a two-part exercise, particularly in front of a jury. In those instances, a lawyer must first simply say "objection" (or some variation thereof), and if possible, should state the "antiseptic legal grounds without argument and without comment." *Jefferis v. Marzano*, 298 Or 782, 792 n5, 696 P2d 1087 (1985); *see also* OEC 103 ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means."). Counsel must then—if the nature of the objection was not obvious—at the next practical time, raise the full nature of their objection outside the hearing of the jury. *Jefferis*, 298 Or at 792 n5 ("[O]rdinarily the court should rule on the objection and if either party is aggrieved by the ruling the aggrieved party should ask to be heard on the objection outside the presence of the jury."); *Villar*, 287 Or App at 659 (discussing obviousness). This may at times require that the jury be removed, that a bench conference be had (which must itself be recorded

---

needless consumption of time and protect witnesses from harassment or undue embarrassment."

*See also* Craig Lee Montz, *Trial Objections from Beginning to End: The Handbook for Civil and Criminal Trials*, 29 Pepp L Rev 243, 288 (2002) (compiling national cases on "asked and answered," which derive their power from other jurisdiction's respective versions of FRE 611).

We have not explicitly ruled on what constitutes an "asked and answered" question. The disallowance of repetitive questions has been upheld previously, though such cases predate the adoption of the Oregon Evidence Code in 1981. *See, e.g., Lawrence v. Portland Ry., Light & Power Co.*, 91 Or 559, 568, 179 P 485 (1919); *Zahumensky v. Fandrich*, 200 Or 588, 267 P2d 664 (1954). Some commenters argue that "asked and answered" is an improper objection, and that circumstances may require that a witness be asked the same question more than once. F. Lee Bailey & Kenneth J. Fishman, *Criminal Trial Techniques*, § 57:30 (2024).

or later be summarized on the record),[2] or the issue be raised at the next break in proceedings.[3] But regardless of how the issue is raised, if it is not obvious, it must somehow make it into the record in order for it to be preserved.

Because defendant did not put the reasons for her objection on the record or ask to be heard, and given the available context, the reason for the objection was not obvious. *See State v. Swinney*, 343 Or App 22, 34, ___ P3d ___ (2025) (issue not preserved despite objection because counsel did not elaborate and there was another plausible reason for defendant's objection, especially given its timing). Objecting to defendant's right to silence is one possible interpretation of the bare objection. But asked and answered is another plausible interpretation of the objection, especially because defendant had not objected when the prosecutor first asked defendant "But you didn't tell the officer that?" We conclude that despite the objection, the circumstances and failure to make a record render the issue unpreserved.

In the alternative, defendant requests plain error review. A plain error is (1) an error of law that is (2) obvious and (3) apparent on the record. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). We are not required to reverse all plain errors, and instead may exercise our discretion. *Id.* at 630. When deciding whether to exercise our discretion to consider a plain error, we may consider, but are not limited to, the following factors:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

---

[2] Failure to memorialize a bench conference may render the issue unpreserved. *See State v. Amoroso*, 336 Or App 732, 738 n5, 562 P3d 641 (2024) (issue discussed during "ten-minute off-the-record conversation" with court and counsel was unpreserved).

[3] Counsel should remain cognizant of the risks of untimely objection. *See State v. Quebrado*, 372 Or 301, 313, 549 P3d 524 (2024) (discussing principles of timely objection).

*Ailes v. Portland Meadows Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991); *see also State v. Horton*, 327 Or App 256, 265, 535 P3d 338 (2023) (discussing considerations beyond the *Ailes* factors). We must, however, be careful not to conflate the arguments between harmlessness and discretion. *State v. Ortiz*, 372 Or 658, 671, 554 P3d 796 (2024) (concluding that non-harmlessness was not a legally sufficient reason to reverse on plain-error review).

Even if the error were plain, we would decline to exercise our discretion to review it because we are not confident that the trial court was presented with both sides of the argument, due to the undeveloped nature of the record as to defendant's invocation of silence.

A finding that defendant had invoked her right to silence would be dispositive for this appeal, and the parties disagree strenuously on this aspect. *State v. House*, 282 Or App 371, 378, 385 P3d 1099 (2016) (where defendant invoked her right to silence, a prosecutor's question as to why she did not tell her exculpatory story to the arresting officer was an improper comment on silence). Here, the state argues that defendant did not invoke her right to silence. Defendant argues that either she did invoke despite answering some of the officer's questions because she was otherwise silent, or alternatively, that she did not have to invoke; both arguments raise weighty constitutional questions.

But the bodycam footage and testimony regarding invocation and silence are incomplete. Stout did not initially have a working bodycam, and was given one only as the investigation was already underway. The footage available in the record cuts out shortly after Stout begins questioning defendant. Stout was understandably not asked, and did not say, whether defendant had invoked her right to silence at any point. There were no pre-trial hearings on the matter. Nor was it entirely clear from Stout's testimony as to what defendant did or did not say after her arrest, transport to the station, 15-minute waiting period, breathalyzer test, and trip home in the officer's car.

Had defendant requested to be heard on her objection, the state might have raised the issue of invocation, and

the court could have taken investigatory measures such as questioning Stout outside the presence of the jury as to the full extent of the post-*Miranda* period. But because the court was not apprised of the nature of the objection, the record went undeveloped as to those key questions. The court was not reasonably apprised of the contours of the dispute, and thus we decline to exercise our discretion. *Ailes*, 312 Or at 382 n 6.

In defendant's second assignment of error, she asserts that the prosecutor's closing argument and rebuttal contained improper comments on her right to silence. Defendant did not object and requests plain error review. For the same reason as the first assignment of error, even if the error was plain, we decline to exercise our discretion.

In defendant's third assignment of error, she asserts that the trial court erred by imposing a $2,500 fine because the jury did not explicitly find that defendant had a blood alcohol content (BAC) of greater than 0.15 percent. Defendant did not object and requests plain error review. Defendant argues that, under *Alleyne v. United States*, 570 US 99, 112, 133 S Ct 2151, 186 L Ed 2d 314 (2013), a jury must find beyond a reasonable doubt any fact which increases a statutory minimum, and that the prosecutor erroneously represented to the trial court that an increased mandatory minimum fine of $2,000 applied, despite the lack of a jury finding on point.

For a BAC of 0.15 percent, the minimum fine is $2,000. ORS 813.010(6)(e)(A).[4] Else, the minimum fine was $1,500.[5] *State v. Frier*, 264 Or App 541, 549, 333 P3d 1093 (2014). The maximum fine for any Class A misdemeanor is $6,250. ORS 161.635(1)(a). We have reversed where a trial court awarded an amount that was the mandatory minimum of one statute, but discretionary under another. *Frier*, 264 Or App at 549. But because the trial court issued a

---

[4] ORS 813.010 was amended in 2023, changing the numbering of the relevant provision, but not the wording. 2023 Or Laws, ch 498, § 3. We cite to the numbering as amended.

[5] The state argues that either way the minimum fine was $2,000, as this was defendant's third conviction for DUII. ORS 813.010(6)(d). But the $2,000 minimum for third offenses applies only when the defendant is not also being jailed; else the minimum is $1,500. *State v. Frier*, 264 Or App 541, 549, 333 P3d 1093 (2014).

$2,500 fine, which was above all relevant statutory mini-mums, and within its discretionary range, it is not obvious that it was applying a minimum fine without a jury find-ing. Because the error is not obvious, it is not plain, and we would not exercise our discretion to correct any error even if it were plain.

       In defendant's fourth assignment of error, she asserts that the trial court erred by considering defendant's failure to accept responsibility in its sentencing. A defen-dant may only be sentenced according to the facts of the case and their personal history, not as a punishment for proceeding to trial. *State v. Qualey*, 138 Or App 74, 76, 906 P2d 835 (1995). Defendant did not object and requests plain error review. Defendant argues that the trial court punished her for proceeding to trial, based on the trial court noting during sentencing:

> "Your pre-conviction history, in other words, the history of driving under the influence prior to the time you were con-victed in this case is concerning. That's what I'm giving the most weight to in sentencing, along with the fact that you didn't appear to accept responsibility for your obvious driving under the influence of intoxicants on the date in question."

We conclude that any error is not apparent on the record because the trial court noted that it was relying on defen-dant's prior history, and because the second part of the court's statement could reasonably be construed as refer-ring to defendant's statements made during sentencing, not trial. *State v. Reyes-Camarena*, 330 Or 431, 525, 7 P3d 522 (2000) (an error is not apparent if we must choose between competing inferences). Thus, the error is not plain and we reject defendant's fourth assignment of error.

       Affirmed.